J-A19031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: N.L.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.T., FATHER | : | No. 23 EDA 2020 |

Appeal from the Decree Entered November 18, 2019
In the Court of Common Pleas of Montgomery County Domestic Relations
at No(s):  No. 2019-A0075

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                Filed: September 1, 2020

J.T. (Father) takes this counseled appeal from the decree entered in the Montgomery County Court of Common Pleas (orphans' court), granting the petition of K.K.T. (Mother)[1] to involuntarily terminate Father's parental rights to their minor, female child, N.L.T. (Child), born in July 2010.[2]  We affirm.

---

[1] The termination petition was jointly filed by Mother and her husband, D.J.T. (Stepfather).

[2] The orphans' court appointed Sharon Lynn Jones-Hofer, Esquire, as legal interests counsel/guardian *ad litem* ("GAL") for Child.  The GAL indicated she met with Child, who was nine years old, prior to the termination hearing.  N.T., 11/18/19, at 5.  The orphans' court credited the GAL's statement that there is no conflict between Child's best interest and her legal interest.  ***Id.*** at 68. ***See In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017) (plurality).  ***See also In re T.S.***, 192 A.3d 1080, 1087 (Pa. 2018) (trial court did not err in allowing children's GAL to act as their sole representative during termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome); ***In re Adoption of K.M.G.***, 219 A.3d 662, 669 (Pa. Super. 2019) (*en banc*) (this Court has authority to raise *sua sponte* issue of whether trial court appointed any counsel for the child, and not authority to delve into quality of the representation), *limited appeal granted*, 362 WAL 2019 (Pa. Dec. 9, 2019).

The relevant factual and procedural history are as follows. Mother and Father did not marry but lived together for approximately three years after Child's birth. N.T., 11/18/19, at 9-10. In 2014, Mother and Father ended their relationship. Father has a history of heroin use and drug addiction. *Id.* at 11, 15, 23, 41. In 2016, Father was involved in an automobile accident while Child was a passenger in the car. *Id.* at 11, 15. According to Mother, Father was under the influence of drugs at the time of the accident. *Id.* at 15. Subsequently, Mother was granted sole physical and legal custody of Child. *Id.* at 11. For a period of time, Mother permitted Father to visit Child at the paternal grandparents' home. *Id.* at 30. In December of 2016, at Father's last visit with Child, W.J.T. (Paternal Grandfather) ejected Father from the home because Father was under the influence of drugs and had drug paraphernalia. *Id.* at 31, 42. Father has not had contact with Child since that time. *Id.* at 11. Father made child support payments approximately every three months but was not current with his payments at the time of the November 18, 2019, termination hearing. *Id.* at 15.

In 2013, Mother began a relationship Stepfather and they married in 2018. N.T. at 9. Mother and Child have maintained a close relationship with paternal grandparents. *Id.* at 12.

On May 7, 2019, Mother filed a petition to involuntarily terminate Father's parental rights to Child. On the same day, Mother and Stepfather also filed a petition for Stepfather to adopt Child. On November 18, 2019, the

orphans' court conducted an evidentiary hearing on the termination petition. At the beginning of the hearing, Father's counsel stated that he spoke to Father on the telephone and that Father indicated he was "about a half an hour away. . . and he is worried he is going to run out of gas and doesn't have any money in his wallet or a debit or credit card[.]" N.T. at 3.

Mother testified, and presented the testimony of Stepfather and Paternal Grandfather. Following Mother's case-in-chief, the orphans' court took a five-minute recess so that Father's counsel could check Father's whereabouts. N.T. at 52. Father's counsel then reported that he telephoned Father, but got his voicemail. *Id.* at 53. Father did not appear at the hearing and his counsel did not present any evidence on his behalf.

At the conclusion of the hearing, the orphans' court delivered its findings of fact and conclusions of law on the record. On that same date, the court entered a decree involuntarily terminating Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). Thereafter, on December 19, 2019, 31 days after the entry of the decree, Father filed a counseled notice of appeal and a Pa.R.A.P. 1925(a)(2) concise statement of errors complained of on appeal.

On February 21, 2020, this Court issued a *per curiam* rule on Father to show cause, within 10 days, why this appeal should not be quashed as untimely filed. On March 5th, Father's counsel filed an untimely response, which averred the following: (1) "[i]n Montgomery County, court-appointed

counsel for birth parents in termination-of-parental [right] cases do not have permission to access the electronic Orphans' Court dockets;" (2) "[a]t 7:59 p.m. on December 18, 2019, the last day in which to file an appeal in this case," counsel emailed the notice of appeal and Rule 1925(a)(2) statement to an orphans' court employee, whom had previously "accepted . . . appeal documents" from counsel; (2) at the same time, counsel sent these documents via facsimile to the orphans' court; (3) counsel also "served" the documents on the orphans' court by first-class mail, and has a receipt stamped December 18, 2019, at 8:38 p.m.; (4) that same evening, counsel "received an automatically-generated email" that the orphans' court employee, to whom he had earlier emailed, "no longer worked there;" (4) the next morning, counsel called the orphans' court, and was ultimately informed his transmissions "would be accepted and the appeal would be filed." Father's Answer to Order, 3/5/20, at 1-3. Counsel further averred he "underst[ood] that the appeal would be filed as of" December 18, 2019, but the court "dated this appeal on the following date of December 19th." *Id.* at 3-4. Finally, we note, counsel attached to his response: his initial email to the orphans' court employee, a time-stamped notice of his facsimile transmission to the orphans' court, and a time-stamped post-office receipt.

On March 10, 2020, this Court discharged the rule to show cause but advised the parties "the issues may be revisited by" the merits panel. Order, 3/10/20.

Father now raises the following issues for our review:

1. Was Father's appeal timely filed?

2. Was the trial court's decision to grant the subject Petition for Involuntary Termination of Parental Rights supported by competent evidence?

Father's Brief at 4.

In his first issue, Father avers "he acted timely to perfect this appeal on December 18, 2019." Father's Brief at 8. In support, he relies on the statements presented in his response to this Court's rule to show cause. Under the particular circumstances presented, we decline to quash this appeal for an untimely notice of appeal.

We note:

> [T]his Court can raise jurisdictional issues *sua sponte*. An appellant must file a notice of appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). This Court "may not enlarge the time for filing a notice of appeal. . . ." Pa.R.A.P. 105(b). Absent a breakdown in the operations of the court, "[t]ime limitations on the taking of appeals are strictly construed and cannot be extended as a matter of grace."

*Commonwealth v. Valentine*, 928 A.2d 346, 349 (Pa. Super. 2007) (some citations omitted). "The question of timeliness of an appeal is jurisdictional in nature. Failure to file a timely notice of appeal divests this Court of jurisdiction." *In re J.M.P.*, 863 A.2d 17, 19 (Pa. Super. 2004). "The 30-day period must be construed strictly. This Court has no jurisdiction to excuse a failure to file a timely notice." *In re Greist*, 636 A.2d 193, 195 (Pa. Super. 1994). An appellant may seek to file an appeal *nunc pro tunc*, which the trial

court may grant "when a delay in filing [an appeal] is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation though a default of its officers." *In re Adoption of W.R.*, 823 A.2d 1013, 1015 (Pa. Super. 2003) (citation omitted).

In the present case, Father had thirty days from November 18, 2019 — or until December 18, 2019 — to file a timely notice of appeal. *See* Pa.R.A.P. 903(a). However, as stated above, Father's notice of appeal was not filed until December 19th, one day later. We note that although counsel acknowledged he could not file the documents electronically, he sent the email and facsimile at 7:59 and 8:00 p.m., after normal business hours. Additionally, counsel did not seek to file the notice of *nunc pro tunc*. Nevertheless, in light of counsel's averments, with supporting exhibits, we conclude there was a breakdown in the orphans' court operations that excuses the one-day delay in filing. Accordingly, we decline to quash this appeal for an untimely notice of appeal.

In his second issue, Father contends the orphans' court erred in conducting the hearing in his absence, where he had communicated to his counsel that he was *en route* but had little fuel in his vehicle. Father avers the court could have continued the hearing, but instead "improperly prioritized its judicial docket over [his] fundamental parental right." Father's Brief at 10. Father reasons he would have provided "testimony [that] is exactly the kind of critical evidence that a trial court must consider when" considering the

termination of parental rights. *Id.* at 10-11. We note Father does not provide any explanation of his anticipated testimony. Nevertheless, he concludes "the trial court did not acquire sufficiently competent evidence to support its" termination decree. *Id.* at 9. We disagree.

We first consider Father's challenge to the orphans' court's conducting the hearing in his absence.

> [The admission or exclusion of evidence is] within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa. Super. 2007) (citation omitted).

Moreover, "[p]rocedural due process requires, at its core, 'adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.'" *Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001) (citations omitted). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A.*, 683 A.2d 297, 300 (Pa. Super. 1996) (citation omitted).

Here, the orphans' court noted the termination hearing had "been scheduled for several months" and Father had notice of the hearing:

> I know he got notice because I heard . . . very credible testimony[ ] about text messages that [F]ather gave to several

parties in this matter regarding his attendance at the hearing today.

N.T. at 3, 74. The court advised Father's counsel that once Father arrived, "he is welcome to join us in this matter." *Id.* at 3-4.

As stated above, the explanation provide by Father for his absence was a lack of fuel. Where Father had months' notice of the hearing date, we conclude the orphans' court did not abuse its discretion in proceeding in his absence. Furthermore, we emphasize that although Father now claims he would have provided testimony critical to the court's decision, he does not offer any explanation for what that testimony would have been. *See* Father's Brief at 9-11. Father also does not dispute any of the court's findings. Accordingly, we discern no abuse of discretion by the orphans' court in conducting the hearing in his absence. We now consider the court's termination decree.

We note the relevant standard of review:

In reviewing an order involving termination of parental rights, our scope of review is broad, and all the evidence as well as the hearing court's factual and legal determinations will be considered. The standard of review is limited to determining whether the decree of the lower court is supported by competent evidence and whether it gave adequate consideration to the effect of such a decree on the welfare of the child.

\* \* \*

We are bound by the findings of the trial court[,] which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility

determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted).

This Court has explained:

Termination of parental rights is controlled by statute. *See* 23 Pa.C.S.A. § 2511[. U]nder Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (some citations omitted).

A parent is "required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

"[A] parent's basic constitutional right to the custody and rearing of [their] child is converted, upon the failure to fulfill [their] parental duties, to the child's right to have proper parenting and fulfillment of [their] potential in a permanent, healthy, safe environment. A parent cannot protect his parental rights by merely stating that he does not wish to have his rights terminated.

*In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citations omitted).

The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care.

*In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (citations omitted).

In the present case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provide:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \* \* \*
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

*See* 23 Pa.C.S. § 2511(a)(1), (b).

A petitioner seeking termination of parental rights under Section 2511(a)(1) must demonstrate through clear and convincing evidence that, for

a period of at least six months prior to the filing of the petition, the parent's conduct demonstrated a settled purpose to relinquish parental rights or the parent refused or failed to perform parental duties. ***In Re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003). With respect to Section 2511(a)(1), our Supreme Court has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Adoption of Charles E.D.M.***, 708 A.2d 88, 92 (Pa. 1988). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re B., N.M***, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

Here, the orphans' court discussed, at the termination hearing, its decision to terminate Father's parental rights pursuant to Section 2511(a)(1):

> [T]he evidence that I have heard today just doesn't show me [Father's] interest or . . . commitment to have a place of material importance in this child's life.

> \*    \*    \*

> This Court received no credible evidence documenting or demonstrating [F]ather's attempt to contact [C]hild. Other than through child support payments[,] there was no contact, no birthday presents, no holiday presents, no cards, no calls, no visits, nothing. Just an absence.

- 11 -

This Court is also struck by the testimony of [P]aternal [G]randfather and how important this matter is to him today, the fact that he made a lengthy drive, the fact that he came the night before just so he could be here.

      *    *    *

Now, I also heard discussion about what this child wants and it sounds like this is a very lucky little girl in that she has very positive role models in her life. She has got the love and support of her paternal grandparents. She has the love and support of [Mother] and [S]tepfather in this matter.

In this case[,] the Court hereby determines that [Mother] has established by clear and convincing evidence that [F]ather has failed to perform his parental duties other than the payment of court ordered child support, and tha[t] even that was sporadic and when enforced, for a period of more than six months prior to the filing of the petition for termination of parental rights. It is clear that a parent who has no interaction with the child other than the payment of financial support, who has no visits, sends no cards, letters, photographs or gifts, and provides no emotional support for the child has failed to parent. In this case this failure has endured for approximately three years, well in excess of the six months prior to the filing of this petition.

      *    *    *

. . . I note again [that Father] is not here . . . to explain the conduct or the reason for his absence. I have heard what could possibly be termed an incapacity of substance abuse [sic] or drug abuse[;] however, I heard [Paternal Grandfather] talk about [F]ather's failed attempts to remedy that incapacity, and this Court finds no valid explanation for the conduct of [F]ather's absence in this child's life for nearly the last three years.

By the same token, there has been no evidence presented regarding any post-abandonment contact between [Father] and the child in that three-year period.

N.T. at 72-76.

After careful review, we conclude that competent, clear and convincing evidence in the record supports the decision of the orphans' court. *See In re L.M.*, 923 A.2d at 511. The evidence established that, aside from sporadic child support payments, Father has failed to perform his parental duties since December of 2016 — two years and five months prior to Mother's termination petition filing. We again emphasize Father does not dispute any of the court's findings, and does not explain what testimony he would have provided at the hearing. Accordingly, we do not disturb the court's findings under Subsection 2511(a)(1).

With respect to Subsection 2511(b), we note:

Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." As this Court has explained, "Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered" as part of our analysis. "While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child."

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citation omitted).

The orphans' court explained its decision to terminate Father's rights pursuant to Subsection 2511(b) as follows:

> [I]n this case the testimony clearly established that [F]ather has not maintained contact nor sought opportunities to develop or maintain a relationship with this child. And this Court finds that there is no parental bond between the child and [F]ather. [F]ather has not provided a home, has not met the child's needs, has not visited the child, and has not developed and maintained a parent-child relationship.
>
> By contrast, the testimony of [M]other, [S]tepfather, and of [P]aternal [G]randfather all demonstrate convincingly that the [S]tepfather has worked diligently and painstakingly to become an important parental figure in this child's life, that he is involved in her daily life and in building a loving home. Together with [Mother, S]tepfather provides for the child's physical and emotional needs and well-being and is a steady, supportive, nurturing and constant presence in her life.
>
> I conclude that the emotional needs and welfare of this child can best be met by termination of the parental rights of [F]ather, and that the child will not suffer a detriment as a result of terminating [F]ather's parental rights.
>
> In this case I find that there is no parental bond between [F]ather and the child. Moreover, I find that the testimony clearly and convincingly demonstrated a bond between [S]tepfather and this child. . . .
>
> In addition, I find that the termination of [F]ather's parental rights will best serve the needs and welfare of this child and will not irreparably harm the child.

N.T. at 78-79.

After reviewing the record, we conclude the evidence supports the orphans' court determinations. As discussed above, by the time of the

- 14 -

November 2019 hearing, Child had not had any contact with Father for almost three years. There was no evidence that Father and Child shared a parent-child bond. Mother testified that Child did not feel safe with Father. N.T. at 21. Stepfather testified that Child saw Father at a previous hearing, was terrified and upset, and cried. *Id.* at 35. Conversely, Mother testified that Stepfather has known Child since she was three years old, Child calls him "her dad," and Stepfather is a "perfect father." *Id.* at 12. Mother stated Stepfather "goes to all the school events, piano lessons. He does everything. He is what a father should be." *Id.* Notably, Paternal Grandfather testified to Father's "longstanding" history of addiction, beginning when Father was 15 years old,[3] and that Paternal Grandfather "[a]bsolutely" supports "the adoption." *Id.* at 41, 43. We further note Mother has a good relationship with the paternal grandparents, and that Child has visits with them. *See id.* at 12 (Mother testifying that paternal grandparents "are great to us"). Contrary to Father's contention, the testimony of Mother, Stepfather, and Paternal Grandfather was sufficient to support the court's conclusions.

For the foregoing reasons, we affirm the orphans' court's decree granting Mother's petition to involuntarily terminate Father's parental rights to Child.

Decree affirmed.

---

[3] At the time of the termination hearing, Father was 30 years old.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/1/20